Edward L. WILKES, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 84149.

Supreme Court of Missouri,
En Banc.

Aug. 27, 2002.

Jeannie M. Willibey, Asst. Public Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrew W. Hassell, Assistant Attorney General, Jefferson City, for Respondent.

TEITELMAN, J.

Edward L. Wilkes (Wilkes) was charged with one count of second degree murder, *section 565.021 RSMo (1994),*[1] one count of first degree assault, section 565.050, and two counts of armed criminal action, *section 571.015,* for his involvement in a shooting in Kansas City, Missouri. The first trial resulted in a hung jury. At the second trial, Wilkes was convicted on all counts. The Court of Appeals, Western District, affirmed Wilkes' convictions. Wilkes timely filed a Rule 29.15 motion for post-conviction relief. The motion court denied his motion without an evidentiary hearing. After an opinion by the court of appeals, this Court accepted transfer pursuant to article V, section 10, of the Missouri Constitution.

In Point I, Wilkes alleges that defense counsel was ineffective for failing to introduce the testimony of Russell Howard, an eyewitness to the shooting whose testimony differed from that offered by the state's witnesses. Defense counsel called Mr. Howard to testify at the first trial, but did not introduce Mr. Howard's testimony at the second trial. In Point II, Wilkes alleges that defense counsel was ineffective for failing to object to Amy Fields' testimony that Wilkes returned her car after borrow-

---

1. All references to footnotes are to RSMO 1994, unless specified otherwise.

ing it and that she then found bullets in the glove compartment that were similar to those found at the crime scene.

The judgment is reversed and remanded for an evidentiary hearing on the allegations in Point I and affirmed with respect to the allegations in Point II.

## I.

The case was brought to trial in December 1997. In relevant part, the evidence was as follows. In late 1995 and early 1996, Wilkes was living in Topeka, Kansas with his girlfriend, Amy Fields. On February 1, 1996, Wilkes borrowed Fields' light blue Ford Escort and told her he was going to Lawrence, Kansas with a friend.

That same day, Gary Singleton and Kenneth Moore were sitting in a car that was parked on 16th Street, near Bartle Hall in downtown Kansas City, Missouri. Sometime after 10:30 p.m., Singleton noticed a "dusty, sky blue Escort" with two men in it drive by and park on the opposite side of the street, two or three car lengths beyond where he and Moore were parked. Shortly thereafter, Moore asked Singleton to retrieve something from the back seat. While Singleton was in the back seat of the car, two men approached. One of the men began shooting. Moore was killed. Singleton was wounded. Singleton testified that immediately after he was shot, he briefly made eye contact with the shooter through the side window and then "played dead." He eventually looked out the window and saw the two men get into the Escort. The police later showed Singleton a photospread that included Wilkes' picture. He identified Wilkes as the shooter.

Reece Good, a passerby who was leaving Bartle Hall and was within view of 16th Street at the time of the shooting, testified that approximately thirty or forty seconds after the shooting, he saw two men run down the street, get into a car and leave the scene. He described the car as "possibly" a Ford Escort that was "silver or light blue." However, Good also admitted that the car "could have been dirty ... from the salt on the roads."

In order to rebut the testimony offered by Singleton and Good, defense counsel called Russell Howard to testify. Howard testified that prior the shooting, he saw the two men standing outside a car that was parked on 16th Street, talking to the people inside the car. Mr. Howard heard two gunshots. The two men who had been standing outside the car then fled across a parking lot and out of sight. Unlike Singleton and Good, Howard did not see the two men run into the nearby Ford Escort and leave the scene. Howard's testimony supported Wilkes' claim that he was not in Kansas City on the night of the shooting and that Singleton misidentified him. The jury could not reach a unanimous decision.

The second trial began in June 1998. The state presented essentially the same evidence that was presented at the first trial. However, defense counsel did not call Mr. Howard to testify or introduce his testimony from the first trial.[2] Defense counsel introduced no other evidence. Wilkes was convicted on all counts.

## II.

In order to plead a claim for ineffective assistance of counsel, Wilkes must allege facts showing that counsel's performance did not conform to the degree of professional skill and diligence of a reasonably competent attorney and that he was thereby prejudiced. *State v. Brooks*, 960 S.W.2d 479, 497 (Mo. banc 1997). To demonstrate prejudice, Wilkes must allege facts showing a reasonable probability

2. Mr. Wilkes had the same attorney for both trials.

that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id. at 694, 104 S.Ct. 2052.*

■ Wilkes is entitled to an evidentiary hearing if his motion meets three requirements: (1) the motion must allege facts, not conclusions, warranting relief; (2) the facts alleged must not be refuted by the files and records of the case; and (3) the allegations must have resulted in prejudice. *Morrow v. State*, 21 S.W.3d 819, 823 (Mo. banc 2000). An evidentiary hearing may only be denied when the record *conclusively* shows that the movant is not entitled to relief. *Rule 29.15(h)* (emphasis added).

### III.

■ In his first point on appeal, Wilkes argues that the motion court clearly erred in denying without an evidentiary hearing his claim that counsel was ineffective for failing to call Russell Howard as a witness at the second trial.

To warrant a hearing on this claim, Wilkes had to allege: (1) the identity of the witness; (2) what the witness' testimony would have been; (3) that counsel was informed of the witness' existence; (4) whether the witness was available to testify; and (5) that the testimony would have provided the movant with a viable defense. *State v. Williams*, 945 S.W.2d 575, 582 (Mo.App.1997).

In his amended Rule 29.15 motion, Wilkes summarized Howard's testimony at the first trial. Wilkes alleged that "counsel was aware of Mr. Howard's account of the shooting and knew how to contact him, as counsel had deposed Mr. Howard prior to [Wilkes'] first trial and called him as a

witness at [Wilkes'] first trial." He then alleged that Howard's testimony "differed from the version of events told by other witnesses" and "cast doubt on the claims of other witnesses that the shooter got into a vehicle and drove off." Wilkes further alleged that Howard's testimony "very likely contributed to the jurors reasonable doubt as to Movant's guilt" and that because his defense was misidentification, it was "imperative for counsel to call any witnesses who cast doubt on Movant's presence at the crime scene." Finally, Wilkes alleged that counsel's failure to elicit Howard's testimony at the second trial, "where Mr. Howard served as a witness in the first trial and the defense obtained a favorable result . . . fell below the level of skill, care and diligence that a reasonably competent attorney would use in similar circumstances."

The motion court denied Wilkes' motion without a hearing on the grounds that: (1) Wilkes claims as to Howard's testimony were "conjecture and speculation;" (2) that Howard's testimony was "cumulative;" and (3) that counsel's decision not to call Howard to testify was a matter of "trial strategy." These findings are clearly erroneous.

The content of Mr. Howard's testimony cannot, in a practical sense, be dismissed as "conjecture and speculation." There is always an element of conjecture or speculation as to what a witness will say. Faded recollections, subtle questioning and, sometimes, outright dishonesty all conspire against precisely forecasting what a witness might say. Howard, a disinterested eyewitness, testified under oath at the first trial and offered a short and simple account of what he saw. He testified that after the shooting, he saw two men run from the victims' vehicle and across a parking lot until he lost sight of them. The record reveals no reason to doubt that

Howard would have testified any differently at the second trial. In the event Howard's testimony would have deviated from that offered in the first trial, counsel could have impeached the testimony with his prior, inconsistent testimony. Alternatively, if Howard was in fact unavailable, counsel could have read the testimony into evidence, thus obviating any doubt as to Howard's testimony. Under the circumstances of this case, the content of Howard's testimony is as certain as can be reasonably expected.

The state also contends that Howard's testimony is speculative. The state argues that Wilkes' motion is deficient because he failed to allege expressly that Howard was available to testify or what Howard would have testified to had he been called. Wilkes concedes that he did not make these allegations. However, in this case, his failure to do so is not fatal.

 Rule 29.15 motions have the dual purpose of adjudicating claims concerning the validity of the trial court's jurisdiction and the legality of the conviction or sentence while avoiding delay in the processing of prisoners' claims and preventing the litigation of stale claims. *Thomas v. State,* 808 S.W.2d 364, 366 (Mo. banc 1991). In order to ensure that claims are decided accurately, the rules encourage evidentiary hearings. *See Rule 29.15(h).* Nothing in the text of Rule 29.15 suggests that the pleading requirements are to be construed more narrowly than other civil pleadings. Thus, a movant may successfully plead a claim for relief under Rule 29.15 by providing the motion court with allegations sufficient to allow the motion court to meaningfully apply the *Strickland* standard and decide whether relief is warranted. *Morrow v. State,* 21 S.W.3d 819, 824 (Mo. banc 2000).

The allegations in Wilkes' motion are sufficient to apprise the motion court of Wilkes' claims and to meaningfully assess those claims under the *Strickland* test. A cursory reading of the motion informs the reader that Wilkes is alleging that counsel's failure to introduce Mr. Howard's testimony at the second trial was not a professionally reasonable decision because he was thereby deprived of the only evidence to support his misidentification defense. It is equally apparent that Wilkes is alleging that counsel's failure to introduce Howard's testimony prejudiced him at the second trial and that the prejudice is objectively demonstrated by the different results at the first and second trials. In addition, these allegations contain a necessary implication that Howard was available to testify and that he would have offered the same testimony as in the first trial. His precise allegations of how and why he was prejudiced necessarily encompass an allegation that Howard would have testified in the same manner as he did at the first trial. Wilkes' factual allegations were sufficient to allow the motion court to meaningfully apply the *Strickland* standard. To accept the state's argument and deny Wilkes an evidentiary hearing under these circumstances would require this Court to abandon a common sense reading of Wilkes' allegations. We decline to do so.

The motion court also found that Howard's testimony was "cumulative." It was not. Singleton testified that after the shooting, he saw two men jump into a nearby blue Ford Escort. Similarly, Good testified that soon after the shooting, he saw two men run to a nearby car matching the general description of the Escort that Wilkes was driving that night. In contrast, Howard testified that after the shooting, he saw two men run across a parking and did not see them enter a vehicle. Howard's testimony was not cu-

mulative of the testimony offered by Singleton and Good.

Finally, the record does not conclusively show that it was reasonable trial strategy for Wilkes' counsel not to present the only evidence supporting Wilkes' viable misidentification defense. No evidentiary hearing was held so counsel was not given the opportunity to explain the strategy to exclude Howard's testimony. The mere assertion that conduct of trial counsel was "trial strategy" is not sufficient to preclude a movant from obtaining post-conviction relief based on a claim of ineffective assistance of trial counsel. *State v. Hamilton*, 871 S.W.2d 31, 34 (Mo.App.1993). For "trial strategy" to be the basis for denying post-conviction relief, the strategy must be reasonable. *Id.* The record reflects no reasonable basis for counsel's decision to not introduce Howard's testimony that directly supported Wilkes' misidentification defense. Thus, a lawyer must utilize every voluntary effort to persuade a witness with material knowledge of an event to testify and then, if unsuccessful, to subpoena him to court in order to allow the judge to use his power to persuade the witness to testify. *Perkins–Bey v. State*, 735 S.W.2d 170, 171 (Mo.App.1987). Wilkes' counsel did not do so, and the record does not conclusively show that counsel's decision not to call Howard as a witness was reasonable trial strategy. Wilkes is therefore entitled to a hearing on his allegations.

## IV.

In his second point on appeal, Wilkes alleges that the motion court clearly erred in denying his motion without an evidentiary hearing because defense counsel was ineffective in failing to object to Amy Fields' testimony concerning the similarity of bullets she discovered in her car to those found by police at the crime scene.

The motion court did not clearly err in denying Wilkes an evidentiary hearing on this point. Evidence is relevant and admissible if it tends to prove or disprove a fact in issue. *State v. Weaver*, 912 S.W.2d 499, 510 (Mo. banc 1995). Fields' testimony was relevant because it tended to show that, prior to or shortly after the shooting, Wilkes had access to ammunition that may have been used in the shooting. *See State v. Williams*, 922 S.W.2d 845, 852 (Mo.App.1996). Counsel is not ineffective for failing to object to admissible evidence. *Clemmons v. State*, 785 S.W.2d 524, 529 (Mo. banc 1990). While counsel's failure to object to particular evidence may be judged after the fact to reflect something less than optimum performance, it does not necessarily equate to a deficiency of constitutional proportion cognizable in a post-conviction motion. Wilkes was not denied his right to a fair trial due to counsel's failure to object to Fields' admissible testimony.

## V.

The judgment affirming the denial of Wilkes' Rule 29.15 motion without an evidentiary hearing is reversed and remanded for an evidentiary hearing on the allegations discussed in Point I. The judgment is affirmed in all other respects.

LIMBAUGH, C.J., WOLFF, BENTON, LAURA DENVIR STITH and PRICE, JJ., and JAMES R. DOWD, Special Judge, concur.

WHITE, J., not participating.