Glenn SEALS, Jr., Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

No. 26051.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 20, 2004.

Mark A. Grothoff, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Adriane Dixon Crouse, Assistant Attorney General, Jefferson City, for respondent.

JAMES K. PREWITT, Judge.

Following jury trial, Glenn Seals, Jr., ("Movant") was convicted of passing a bad check, in violation of § 570.120, RSMo

1994, and, in an amended sentence and judgment, sentenced to four years' imprisonment. His conviction and sentence were affirmed on direct appeal in an unpublished order and memorandum opinion. *State v. Seals,* No. 22747, slip op. (Mo. App.S.D. March 17, 2000) ("*Seals I*"). Within *Seals I,* Movant argued that his wife Diane's testimony, which was refused by the trial court, was offered to show that he did not have an intent to defraud. *Id.* at 3. This Court determined that the claim was not preserved for review and that, under a plain error review, Movant failed to show that any alleged trial court error affected his rights so substantially that a miscarriage of justice or manifest injustice occurred. *Id.*

Movant later filed a Rule 29.15 motion for post-conviction relief claiming ineffective assistance of counsel, related to his counsel's alleged failure "to properly endorse and offer the testimony of Diane Seals on the basis that it was not hearsay but rather evidence of [M]ovant's present state of mind and lack of intent to defraud at the time the statements were made." Within the Rule 29.15 motion, Movant also claimed that he was denied due process and equal protection because he was identified as a prior/persistent/dangerous offender in the amended sentence and judgment. *Seals v. State,* 119 S.W.3d 605, 606 (Mo.App.2003) ("*Seals II*").

We did not address Movant's ineffective assistance of counsel claim in *Seals II,* as we determined that it was necessary to reverse the motion court's denial of the Rule 29.15 motion without an evidentiary hearing and remand the cause for further proceedings because the motion court did not deal with Movant's due process and equal protection claim. *Id.* at 607. Thus, although the motion court addressed the ineffective assistance of counsel claim and granted the State's motion to dismiss with-

out an evidentiary hearing, because it was necessary to remand for compliance with Rule 29.15(j) as it related to the Movant's claim regarding his designation as a prior/persistent/dangerous offender, we declined to address Movant's ineffective assistance of counsel claim pending further proceedings by the motion court. *Id.*

On December 11, 2003, which followed the issuance of this Court's mandate in *Seals II*, Movant filed a waiver of his due process and equal protection claim relating to his designation as a prior/persistent/dangerous offender. According to the waiver, the claim was moot because, following the remand by this Court, Movant had been provided with a corrected sentence and judgment that no longer indicated he was a prior/persistent/dangerous offender. Within the waiver, Movant requested that the motion "court grant an evidentiary hearing or enter findings of fact and conclusions of law on the only remaining claim[.]" That remaining claim was for ineffective assistance of counsel.

Also on December 11, 2003, the motion court entered an amended order granting the State's motion to dismiss Movant's Rule 29.15 motion without an evidentiary hearing. The findings of fact and conclusions of law on Movant's claim of ineffective assistance of counsel were the same as outlined previously by the motion court.

The motion court noted that, pursuant to case law, Movant's intent to defraud was established by his knowledge that the check would not be paid when the check was issued. The motion court also concluded that, "[e]ven if the evidence should have been admitted under some theory," Movant was unable to show that he was prejudiced by the lack of testimony from Diane. The motion court found that Diane's statements in her proffered testimony, regarding what her husband told her, were essentially the same statements to which Movant testified and that "[s]ince neither his statements nor his wife's repetition of those statements provided a viable defense to the crime charged, [Movant] has not been prejudiced."

This appeal followed.

■ Movant raises one point in his appeal and argues that the motion court clearly erred in denying his Rule 29.15 motion without an evidentiary hearing because his motion pled factual allegations that, if proven, would warrant relief and that are not refuted by the record. According to Movant, he received ineffective assistance of counsel, in violation of his federal and State constitutional rights, and was prejudiced because trial counsel failed to properly endorse and offer Diane's testimony on the basis that it was not hearsay, but rather, was evidence of Movant's state of mind and lack of intent to defraud. Movant asks this Court to reverse the motion court's denial of his post-conviction relief and remand the cause for an evidentiary hearing.

Our review of a motion court's denial of post-conviction relief is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. *Rousan v. State*, 48 S.W.3d 576, 581 (Mo. banc 2001). Such findings and conclusions are clearly erroneous only if, after a review of the entire record, this Court is left with the definite and firm impression that a mistake has been made. *State v. Ervin*, 835 S.W.2d 905, 928 (Mo. banc 1992).

To obtain relief on a post-conviction claim of ineffective assistance of counsel, a movant must show, by a preponderance of the evidence, that (1) trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances, and that (2) trial counsel's deficient performance prejudiced

the defendant. *Leisure v. State*, 828 S.W.2d 872, 874 (Mo. banc 1992); *see Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Movant must overcome a strong presumption that trial counsel provided competent assistance. *Leisure*, 828 S.W.2d at 874.

Movant cannot succeed on a post-conviction claim of ineffective assistance of counsel unless he demonstrates that there is a reasonable probability that without trial counsel's error, the result of the trial would have been different. *State v. Stepter*, 794 S.W.2d 649, 656 (Mo. banc 1990). Such a claim may be denied if there is no showing of prejudice. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). A movant's burden in proving ineffective assistance of counsel is heavy as reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance of counsel. *Clayton v. State*, 63 S.W.3d 201, 206 (Mo. banc 2001).

■ Movant correctly states that the issue here is not whether he is entitled to relief under the ineffective assistance of counsel claim, but whether the motion court erred in refusing to grant him an evidentiary hearing on the matter. *Masden v. State*, 62 S.W.3d 661, 664–65 (Mo. App.2001). Under Rule 29.15(h), an evidentiary hearing may only be denied when the record conclusively shows that the movant is not entitled to relief. Movant is entitled to an evidentiary hearing if his motion meets three requirements: 1) the motion must allege facts, not conclusions, warranting relief; 2) the facts alleged must not be refuted by the record; and 3) the allegations must have resulted in prejudice. *Wilkes v. State*, 82 S.W.3d 925, 928 (Mo. banc 2002).

At trial, Movant admitted to writing bad checks during 1996 that totaled $27,000. *Seals I* at 4. This included a check for $492.78 written to Metro Builders Supply on November 8, 1996, that was the subject of the trial. As detailed in *Seals I*, Movant testified that he intended to pay off the check, insisting that he did not intend to defraud the victim. *Id.* During Movant's direct testimony, he stated, "I had intent for it to be paid[,]" and further explained his actions as described below.

[Movant's counsel]: And why did you figure eventually that it would be paid?

[Movant]: Because I felt that I had money, like in a trust fund or that type, and I thought maybe the retailers would sue me civilly and that would eventually be found to where I could pay them and—like I said, I figured everything would be settled in civil court and I didn't figure it would be a criminal offense because I didn't have intentions of harming anyone.

[Counsel]: Why did you think there would be money in a trust fund?

[Movant]: It's just a feeling I had as far as the way society seemed to me like should be set up. . . .

. . . .

[Counsel]: Regarding this trust fund, where did you think that the funds or the money for that trust fund was coming from?

[Movant]: Just family, possibly a grandparent or—you know, as far as my father's side of the family, I wasn't real close with a lot of people to where—I mean I could have easily have had an inheritance of some type that he wasn't even aware of.

[Counsel]: That who wasn't aware of?

[Movant]: My father, you know. It's kind of—more of a feeling that—just I felt like I was bound to have some access to help in life as far as my family, because I knew what my intentions was

and if society and life wasn't set up in that manner, then—I don't know, I just—that was my intentions.

. . . .

[Counsel]: [Movant], did you and your wife get into fights about these checks?

[Movant]: Not really fights, arguments, because at a point she, in a sense, got concerned.

[Counsel]: Did you try to reassure her in anyway about that?

[Movant]: Yes, because I was—I told her that they would be taken care of and I honestly felt that was the case, because I knew that if for some reason—well, I had intentions, but if for some reason I was wrong about me possibly having a trust fund or something or that type, that I would have just tried to get it worked out to, you know, where they would sue me civilly and I would just make payments on it and get it taken care of over a period of time. And I've still got intentions of doing so.

Movant also admitted during his testimony that he knew his account was closed and that the check to Metro Builders Supply would not be paid. *Seals I* at 7.

Also at trial, an offer of proof was made involving Diane's anticipated testimony. The pertinent portion included the following questions by Movant's trial counsel and Diane's subsequent answers.

[Counsel]: [W]hat is your current status of your relationship with [Movant]?

[Diane]: He's my ex-husband.

. . . .

[Counsel]: And so were you married around September through November of 1996?

[Diane]: Yes.

[Counsel]: And were you aware at that time that [Movant] was writing various checks?

[Diane]: Yes.

[Counsel]: And did you have discussions with him about those checks?

[Diane]: Yes.

[Counsel]: And in regard to those discussions did [Movant] ever tell you anything with regard to his intent to pay off those checks?

[Diane]: Yes.

[Counsel]: What did he tell you?

[Diane]: That they would be paid eventually.

[Counsel]: All right. And how did he say that they would be paid eventually?

[Diane]: Working to pay them back.

. . . .

[Counsel]: Did he mention any other possible sources of income to pay off those checks?

[Diane]: He says he has money, but I don't know of any money he might have.

[Counsel]: Okay, But he was telling you that he had money?

[Diane]: Yes.

[Counsel]: Did he say where he had money from?

[Diane]: All I ever heard him say was people owe him money, and I don't know.

[Counsel]: Did you ever hear him talk about him being convinced he was a millionaire?

[Diane]: Yes, he said he's convinced he's a millionaire and his family was keeping his money from him.

The trial court asked Counsel to verify that he was "proposing to offer an unendorsed witness to testify that [Movant] made statements to her about his intentions to pay merchants money that they were due for checks written[.]" Counsel's answer was as follows.

Yes, Your Honor, and also as far as his mental state at that time. Not his

mental state as far as intent, but his mental state as far as needing counseling and medicine and not taking it, and the diagnosis of schizophrenia.

The trial court ruled that Diane's proffered testimony would not be admissible. The trial court explained that Diane testifying to statements such as, "Well, my husband told me he had money coming to cover the checks," was "self-serving hearsay." In response to a question from the trial court, Counsel clarified that Movant was not pursuing a defense of not guilty by reason of mental disease or defect, but that Movant's defense was "straight out not guilty by reason of a lack of intent to defraud, not that he was incapable of forming that intent."

As noted earlier, Movant raised an issue on direct appeal related to Diane's proffered testimony and argued that the testimony was offered to show that Movant did not have an intent to defraud. *Seals I* at 3. However, this Court determined that the issue was not preserved for review as it was not the issue presented to the trial court in Movant's motion for new trial, which indicated that Diane's testimony was "admissible as a prior consistent statement to rebut any assertion ... that [Movant] had fabricated regarding testimony he gave at trial." *Id.* Thus, we could only review the issue for plain error, which we determined did not exist because, "even if the trial court erred, [Movant] has failed to show that the error affected his rights so substantially that a miscarriage of justice or manifest injustice will occur if the error is left uncorrected." *Id.* In our conclusion, we also noted "the overwhelming evidence of [Movant's] guilt and [Movant's] farcical defense." *Id.* at 7.

■ It is well established that an issue that has been considered on direct appeal cannot be re-considered in a post-conviction proceeding by simply transforming

the issue into a claim of ineffective assistance of counsel. *Boyd v. State,* 86 S.W.3d 153, 159 (Mo.App.2002). However, Movant is correct that the Missouri Supreme Court established in *Deck v. State,* 68 S.W.3d 418 (Mo. banc 2002), that a finding of no plain error does not equate to a finding of no prejudice under the *Strickland* standard. *Deck,* 68 S.W.3d at 427.

■ The test for plain error and the test under *Strickland* are not equivalent. *Zych v. State,* 81 S.W.3d 96, 99 (Mo.App. 2002). Plain error can serve as the basis for granting a new trial on direct appeal only if the error was outcome-determinative. *Schnelle v. State,* 103 S.W.3d 165, 177 (Mo.App.2003). Under *Strickland,* however, an outcome-determinative test cannot be applied in a post-conviction setting. *Id.*

■ "The ultimate determination is not the propriety of the trial court's actions with regard to any alleged error, but whether defendant has suffered a genuine deprivation of his right to effective assistance of counsel such that the appellate court's confidence in the fairness of the proceeding is undermined." *Zych,* 81 S.W.3d at 99. However, the theoretical differences between the plain error standard and the *Strickland* standard "will seldom cause a court to grant post-conviction relief after it has denied relief on direct appeal, because, in most cases, an error that is not outcome-determinative on direct appeal will also fail to satisfy the *Strickland* test." *Id.*

As stated in *State v. Warren,* 628 S.W.2d 410 (Mo.App.1982), a case where there is an allegation of "no funds" or "no account," a defendant's intent to defraud is determined at the time that the check is issued. *Id.* at 412. Further, a defense of "reasonable expectation of payment" must be

more than a "mere hope" that funds will be available to cover the check. *Id.*

▮ We also note that in post-conviction cases involving ineffective assistance of counsel and the calling of a fact witness, Movant is entitled to a hearing if he alleges: 1) the identity of the witness; 2) what the testimony of the witness would have been; 3) that defense counsel was informed of the existence of the witness; 4) whether the witness was available to testify; and 5) that the testimony of the witness would have provided Movant with a viable defense. *Wilkes,* 82 S.W.3d at 928.

We agree with the motion court that Diane's testimony, even if it was admissible under any theory, failed to provide Movant with a viable defense to intent to defraud. In light of the overwhelming evidence of Movant's guilt presented at trial, discussed here and in his direct appeal in *Seals I,* Movant cannot demonstrate prejudice under the *Strickland* standard. *See Dugan v. State,* 112 S.W.3d 126, 127 (Mo. App.2003). Nor has Movant met the standard stated in *Wilkes,* under which he is entitled to an evidentiary hearing only if the allegations raised in the post-conviction motion resulted in prejudice. *Wilkes,* 82 S.W.3d at 928.

The motion court's judgment granting the State's motion to dismiss without an evidentiary hearing is affirmed.

GARRISON, P.J., and RAHMEYER, J., concur.