**Kenny V. COFIELD, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

**No. 26317.**

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 24, 2005.

Mark A. Grothoff, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Assistant Attorney General, Jefferson City, for Respondent.

PHILLIP R. GARRISON, Presiding Judge.

Kenny V. Cofield ("Movant") appeals from the Circuit Court of Greene County's denial, without an evidentiary hearing, of his Rule 29.15[1] motion for post-conviction relief based on ineffective assistance of counsel. We affirm.

Movant was charged with three counts of the class C felony of child molestation in the first degree, pursuant to Section 566.067,[2] one count of the class A misdemeanor of sexual misconduct in the first degree, pursuant to Section 566.090, and one count of the class B misdemeanor of sexual misconduct in the second degree, pursuant to Section 566.093. Following a trial by jury, Movant was convicted of the three counts of child molestation, but acquitted of the two counts of sexual misconduct. He was sentenced to consecutive sentences of seven years for each count. Movant appealed his convictions to this court and we affirmed in *State v. Cofield*, 95 S.W.3d 202 (Mo.App. S.D.2003).

Movant filed a Rule 29.15 motion for post-conviction relief, counsel was appointed and filed "Counsel's Statement in Lieu of Amended Motion Under Rule 29.15" on behalf of Movant, stating that it was not necessary to file an amended motion in that no additional facts or claims known to counsel had been omitted from the pro se motion. The State filed a motion to dismiss Movant's motion without an evidentiary hearing, and the motion court filed its findings of fact and conclusions of law granting the State's motion. This appeal followed.

Movant moved in with his sister, W.C.,[3] at her home in Springfield, Missouri, in March or April of 2000. Also living in W.C.'s home were her husband and three children, M.C., J.C., and T.C. Movant stayed in the downstairs family room. While Movant was living there, he molested M.C., who was eight years old at the time, on three occasions. On the first occasion, M.C. was watching television with Movant in his room when she felt ill. Movant told M.C. that she could lay on his bed and he would lay on the couch. M.C. fell asleep and awoke in the early morning

---

1. All rule references are to Missouri Rules of Criminal Procedure (2003) unless otherwise indicated.

2. All statutory references are to RSMo (2000) unless otherwise indicated.

3. We use initials of the victim and her family in order to protect their identities.

to find her pajama pants removed and Movant touching her private parts. After this incident, Movant threatened to kill M.C. if she told anyone. A second incident occurred when M.C. was lying on the couch in Movant's room watching television when she fell asleep. She awoke to find Movant touching her private parts again. The third time, M.C. testified that she was downstairs cleaning and was hit in the head with something. When she awoke, she was naked on the floor and Movant was touching her with his hands and penis.

On May 29, 2000, J.C., W.C.'s other daughter who was fifteen at the time of the incident, informed her mother that Movant had inappropriately touched her the night before. W.C. immediately told Movant he had to leave the house, and took him to a bus station. When W.C. returned, M.C. asked her where Movant was, and W.C. explained to her why Movant had left. At this point, M.C. told her mother about Movant touching her and how he had threatened to kill her. W.C. then reported these incidents which led to the arrest and eventual conviction of Movant.

Movant presents one point in this appeal. He claims that he was denied effective assistance of counsel when his trial counsel failed to cross-examine M.C. and W.C. with prior inconsistent statements.

Appellate review of the denial of a motion for post-conviction relief is limited to a determination of whether the findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k); *Parham v. State*, 77 S.W.3d 104, 106 (Mo.App. S.D. 2002). "Findings and conclusions are clearly erroneous if, after a review of the entire record, the *court is left with the definite and firm impression that a mistake has been made." *Middleton v. State*, 80 S.W.3d 799, 804 (Mo. banc 2002) (*quoting* *Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000)).

If the motion, the files and records of the case conclusively show that the movant is entitled to no relief, an evidentiary hearing on the Rule 29.15 motion shall not be held. Rule 29.15(h). An evidentiary hearing on the *motion is only necessary if*: (1) the motion alleges facts, not conclusions, warranting relief; (2) the facts alleged raise matters not refuted by the files and records in the case; and (3) the matters of which movant complains resulted in prejudice. *State v. Brooks*, 960 S.W.2d 479, 497 (Mo. banc 1997).

In order for a criminal defendant to be granted post-conviction relief on the basis of ineffective assistance of counsel, the defendant must demonstrate that "his counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under substantially similar circumstances, and that he was thereby prejudiced." *Parham*, 77 S.W.3d at 106 (*citing Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)). There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 695 (1984). Therefore, Movant must show that counsel's performance fell below an objective standard of reasonableness and, but for counsel's performance, a reasonable probability exists that the outcome of the trial would have been different. *Wright v. State*, 125 S.W.3d 861, 866 (Mo.App. S.D.2003). "If the [movant] fails to satisfy one of the two prongs of the *Strickland* test, we are not compelled to address the other prong and the claim of ineffective assistance of counsel must fail." *Dorsey v. State*, 113 S.W.3d 311, 314 (Mo. App. S.D.2003).

■ We will first address Movant's claim as to M.C. In his motion, he stated, [t]rial counsel unreasonable [sic] failed to demonstrate that [M.C.'s], story was a fabrication by establishing what she had described, to Police, DFS workers, as well as at Preliminary Hearing, That [sic] Movant allegedly comitted [sic] these acts in her room, and the time frame is contrary to [M.C.'s] description at trial.

As facts and evidence supporting this claim, Movant stated only, "[t]rial counsel unreasonably failed to cross-examine [M.C.], According [sic] to prior testimony as he was awear [sic] of it at trial, [sic] Had counsel done so, a reasonable probability would have existed of a different result at movant's trial."

At trial, Movant's counsel conducted a thorough cross-examination of M.C., during which he asked specific questions about where the touching incidents took place and the timing of the incidents. Movant's counsel did not specifically ask M.C. whether she had previously told him or someone else that any of the incidents took place in her room, though he did inquire as to whether she remembered telling him an incident took place at a different time.

Emilie Dortch ("Dortch"), the Division of Family Services investigator who conducted the initial interview with M.C. on August 16, 2000, also testified at trial. Her testimony was consistent with M.C.'s testimony regarding the first incident of touching. After Dortch learned of this incident, she terminated the interview so that a more thorough interview could be conducted later. Shane Gooden ("Gooden"), the Greene County Sheriff's Deputy that accompanied Dortch to the interview with M.C., also gave testimony at trial consistent to that given by M.C. in her trial testimony.

The motion court, in its findings of fact and conclusions of law, stated that Movant did not describe in his motion what inconsistencies regarding time and place his counsel should have used in cross-examination of M.C. other than the conclusory statement "that Movant allegedly committed these acts in her room, and the time frame is contrary to [M.C.'s] description at trial." The motion court further pointed out that Movant did not describe how this failure to cross-examine prejudiced him. The motion court found that Movant was not entitled to an evidentiary hearing when he made only conclusory allegations, and, further, the record reflects that M.C.'s testimony was consistent with that of Dortch and Gooden regarding their initial contact with her. Finally, the motion court stated, "Movant does not explain, nor is it apparent from the record, what further action a reasonably competent attorney would have taken that trial counsel failed to take."

Movant claims in his brief that he is entitled to an evidentiary hearing on his motion because M.C.'s statements to police, to DFS workers, at a pretrial deposition, and in the preliminary hearing, were inconsistent with her trial testimony. He argues that M.C. earlier stated that he touched her only once and that it happened in her room, also giving a different time frame than she testified to at trial. He claims that at an evidentiary hearing he would have been permitted to establish the inconsistencies between M.C.'s alleged prior statements and her trial testimony and that this would have cast doubt on her trial testimony and supported his testimony that he did not touch M.C. inappropriately or threaten her. He also claims that though the decision not to cross-examine M.C. regarding her prior inconsistent statements might appear to be trial strategy, the only way to determine this with

certainty would be to examine his trial counsel at an evidentiary hearing and give him an opportunity to show that this failure was not reasonable.

The State counters by asserting that the testimony given by Gooden and Dortch at trial concerning their earlier conversation with M.C. was consistent rather than inconsistent with her trial testimony, and therefore, Movant's claims are refuted by the record. Also, the State points out that in his motion, Movant did not indicate that he would need to call witnesses to establish his assertions regarding M.C.'s prior statements. Movant claimed that he would rely only on sources already in existence at the time his motion was filed and gave no indication that he intended to elicit any further evidence at an evidentiary hearing. The State contends that this is not merely an oversight on Movant's part because, in one of the other claims in his motion which he did not appeal, he states that he would have called his trial counsel and given testimony himself at an evidentiary hearing. It, therefore, argues that remand for an evidentiary hearing would not serve any purpose.

Movant has pled conclusions, not facts, in that he did not explain how M.C.'s prior statements were inconsistent with her statements at trial, only stating that she described that he "allegedly comitted [sic] these acts in her room, and the time frame is contrary to [M.C.'s] description at trial." He does not state how this differed from her trial testimony. "As distinguished from other civil pleadings, courts will not draw factual inferences or implications in a Rule 29.15 motion from bare conclusions or from a prayer for relief." *Morrow v. State*, 21 S.W.3d 819, 822 (Mo. banc 2000). "Where the pleadings consist only of bare assertions and conclusions, a motion court cannot meaningfully apply the *Strickland* standard for ineffective assistance of counsel." *Id.* at 824; *see also White v. State*, 939 S.W.2d 887, 897 (Mo. banc 1997), *cert. denied*, 522 U.S. 948, 118 S.Ct. 365, 139 L.Ed.2d 284 (1997) (holding that "[a] bare allegation that certain witnesses made 'prior inconsistent' statements without stating what was said and how it conflicted with what was testified to at trial is a conclusion, not a fact").

Furthermore, the record refutes Movant's claim with regard to M.C.'s statements to DFS workers and police officers. Movant alleges that M.C. made her inconsistent statements to DFS workers, police officers, and at a preliminary hearing. Her accusations were first made to Dortch and Gooden during M.C.'s initial interview. Dortch and Gooden both testified at trial and described the statements M.C. made at this interview. M.C.'s trial testimony, however, was consistent with her previous statements to Dortch and Gooden. Therefore, the record refutes Movant's claim of inconsistent statements made by M.C. to DFS workers and police officers.

The record before us contains no transcript of a preliminary hearing in which M.C. may have testified. We are, therefore, unable to conclude that M.C. made statements at Movant's preliminary hearing that were inconsistent with her trial testimony.

Additionally, we note that reasonable trial strategy cannot form the basis for a claim of ineffective assistance of counsel, even if that strategy, in hindsight, was ill-fated. *Seals v. State*, 141 S.W.3d 428, 431 (Mo.App. S.D.2004). Appellate courts have found that "[t]he decision whether or not to impeach a witness with a prior inconsistent statement is a matter of trial strategy and cannot be the basis for a finding of ineffective assistance of counsel." *Reynolds v. State*, 87 S.W.3d 381, 385 (Mo.App. S.D.2002); *see State v. Westcott*, 857 S.W.2d 393, 397 (Mo.App. W.D.

1993). "A movant must establish the impeachment would have provided a defense or changed the outcome of the trial." *Norville v. State*, 83 S.W.3d 112, 116 (Mo. App. S.D.2002). Under these authorities, Movant's claim does not warrant relief. Therefore, we do not find error with the motion court's denial of an evidentiary hearing and denial of his motion for post-conviction relief on the basis of Movant's claims as to M.C.

■ Movant also argues that his trial counsel should have cross-examined W.C. on prior inconsistent statements she made concerning a replica gun owned by Movant. In his motion, Movant stated,

[t]rial counsel unreasonable [sic] failed to demonstrate that [M.C.'s] Mother, [W.C.]'s story was a fabrication by establishing that she had [sic] not describe [sic], to Police, DFS workers, That [sic] Movant allegedly had threatened [M.C.] with a gun, [sic] Her prior statement's [sic] are contrary to the alleged description at trial.

For the facts and evidence supporting this claim, Movant stated, "[t]rial counsel unreasonably failed to cross-examine [W.C.], According [sic] to prior testimony as he was awear [sic] of it at trial, [sic] Had counsel done so, a reasonable probability would have existed of a different result at movant's trial."

At trial, W.C. testified that one of the reasons M.C. gave for not telling W.C. about the touching incidents with Movant was that he threatened her. W.C. stated that in October of 2001, her children were retrieving Halloween decorations from storage in the garage when they discovered a pistol. The children showed the pistol to W.C., who stated that it did not belong to her or anyone in her immediate family. M.C. then told W.C. that Movant showed her that pistol and told her that he had guns, and that is why she believed

Movant when he said he would kill her. W.C. called the police to report the pistol, and an officer came to her house to pick it up. It turned out that the pistol was only a non-firing replica, though the police officer believed, at first, that it was functional. On cross-examination, W.C. stated that M.C. had not mentioned the threat when she initially told her about the touching incidents. W.C. also stated that there was no mention of the pistol at all by M.C. until after she found it in the garage in October 2001, approximately four months before trial and more than a year after the alleged incidents took place.

The testimony given at trial by Gooden and Dortch, who interviewed M.C. and her mother on August 16, 2000, does not mention the gun nor does it indicate that W.C. ever claimed knowledge of the replica gun or knew that Movant threatened M.C. with this gun before it was found in October of 2001.

The motion court found, similar to his claims as to M.C., that Movant did not "explain what testimony would have established that [W.C.'s] story was a fabrication; nor does he explain how he was prejudiced by failing to produce this testimony." The motion court pointed out that W.C. was generally aware of threats made to M.C., but was not aware of the gun until it was located by the children just before trial. It noted that, "[a]ny questioning relating to the gun clearly posed a strategy dilemma for trial counsel, who tried to keep any evidence related to the weapon from being admitted." The motion court also found that "any mention of the weapon would be prejudicial to Movant" and had Movant's counsel followed Movant's suggestions, "he risked emphasizing the weapon and further alienating the jury from his client." The motion court concluded that failure to cross-examine on this point was not inef-

fective assistance of counsel or prejudicial to Movant.

Movant argues that W.C., through her pretrial statements, "was aware that [Movant] owned a replica gun, but she did not indicate that [Movant] had threatened [M.C.] with it." He claims that her inconsistent statements would have cast doubt on her trial testimony and would have supported his testimony that he owned a replica gun, but did not threaten M.C. with it. This, he claims, would have led to a reasonable doubt in the jury's minds and a different result · at trial. Furthermore, Movant argues that an evidentiary hearing would allow him to establish how W.C.'s statements were inconsistent with her trial testimony, how those statements would have supported his defense, how the statements would have raised a reasonable doubt in the minds of the jury members, and also whether his counsel's failure to cross-examine was a matter of trial strategy.

Movant bases his argument on the fact that his counsel supposedly failed to impeach W.C. with the fact that she did not mention the gun to DFS workers and police officers when she spoke with them at their initial interview with M.C. The record is quite clear, however, that W.C. only learned of the replica gun in October of 2001, approximately four months before trial was held in January of 2002. She did not tell Dortch and Gooden about the gun because she did not know about it when she spoke with them. Therefore, she could not be impeached at trial for · not mentioning the gun when she spoke to Dortch and Gooden. There is nothing in Movant's motion or in the record indicating that W.C. ·made statements to the effect that she was aware of the gun at an earlier time. Movant's claim is totally without merit. The motion court· did not clearly err in denying Movant an eviden-tiary hearing and finding that he did not receive ineffective assistance of counsel.

Movant's point on appeal is denied and the motion court's order dismissing and denying his motion ·for post-conviction relief is affirmed.

PREWITT, J., and RAHMEYER, J., concur.