

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| RANDY G. TETER, | ) |
| | ) |
| Appellant, | ) |
| | ) WD87012 |
| v. | ) |
| | ) OPINION FILED: |
| | ) July 29, 2025 |
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent. | ) |

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Jon E. Beetem, Judge**

**Before Division Three:** Mark D. Pfeiffer, Presiding Judge,
Cynthia L. Martin, Judge, and Janet Sutton, Judge

Mr. Randy G. Teter ("Teter") appeals the judgment of the Circuit Court of Cole

County, Missouri ("motion court"), which denied his motion for post-conviction relief

("PCR") pursuant to Rule 24.035.  We affirm.

## Facts and Procedural History

On August 20, 2014, Teter, while incarcerated in the Missouri Department of

Corrections for second-degree murder, killed another inmate.  Teter was indicted by a

grand jury on one count of murder in the first degree, and the State later filed notice of its

intent to seek the death penalty.  Because of the State's intent to seek the death penalty,

attorneys from the public defender's Capital Litigation Division began representing Teter. Soon after, Teter filed a motion to proceed *pro se*, and several months later, he filed a second motion to proceed *pro se*. The motions were denied after a hearing.

Throughout the remainder of the litigation, Teter filed dozens of *pro se* motions in addition to the filings of his attorneys. These *pro se* motions included two motions to reconsider the denial of his motions to proceed *pro se* and a motion for interlocutory appeal of the same denial—none of which were granted. Eventually, Teter filed a motion to remove counsel, alleging that his appointed counsel had demanded sexual favors in exchange for a successful outcome in his case. And, four months after the filing of this motion, Teter filed a *pro se* motion to dismiss, which in part, asserted that the court had no authority to appoint counsel for him.

On July 27, 2018, Teter attempted to escape the custody of the Department of Corrections by holding one of its employees hostage. Before any charges for this attempted escape were filed, Teter's defense counsel negotiated a plea agreement in his murder case, which provided that Teter would plead guilty to second-degree murder instead of first-degree murder, in exchange for the following terms relevant to this appeal:

> 1. The State shall recommend a sentence of (30) thirty years in the Missouri Department of Corrections.
>
> 2. The Defendant is free to recommend to the court a sentence as low as (15) fifteen years in the Missouri Department of Corrections.
>
> 3. The parties ask the court that the sentence imposed by the court shall be run concurrent with all other current terms of the defendant's incarceration.

. . . .

6.  The State shall not file (and is thereby barred from filing) criminal causes of action against the defendant for certain criminal conduct which is illustrated by four probable cause statements and which are further defined in exhibits A-D of the plea agreements.  Such exhibits are hereby referenced and incorporated herein.

7.  In the event that the State obtains probable cause of a crime committed by the defendant . . . in which the defendant may have been alleged to have attempted an escape from confinement, the State will agree that for any sentences arising from that prosecution the State shall recommend:  a) a concurrent sentence with all other terms and sentences of incarceration and b) a sentence no larger than the sentence received in the cause captioned above.

Teter accepted the plea agreement's terms and entered a guilty plea, which the plea court accepted after a colloquy.  During that colloquy, the plea court thoroughly questioned Teter regarding the voluntariness of his plea and the adequacy of his representation, and he indicated that his plea was voluntary and that he was unequivocally satisfied with his representation:

[The Court]:  Has anyone threatened you to get you to plead guilty?

[Teter]:  No, your Honor.

[The Court]:  Has anyone promised you anything other than the State's recommendation to get you to plead guilty?

[Teter]:  No, your Honor.

. . . .

[The Court]:  Did you have plenty of time to speak with your attorneys about what was going to happen today?

[Teter]:  Yes, your Honor.

[The Court]:  Is there anything you wanted them to do in your defense that they did not do?

3

[Teter]: Find me not guilty, but besides that, no, your Honor.

[The Court]: Very well. I hear that occasionally. Is there anything you did not want them to do that they did any way?

[Teter]: No, your Honor.

[The Court]: Were there any witnesses that you wanted them to talk to that they didn't talk to?

[Teter]: No, your Honor.

[The Court]: Were there any motions of any kind, such as a motion to suppress evidence that you wanted them to file that they either did not file or did file but did not pursue to your satisfaction?

[Teter]: No, your Honor.

[The Court]: Before pleading guilty, did you have plenty of time to speak to them about the facts of the case and any possible defenses?

[Teter]: Yes, your Honor.

[The Court]: Did they make you plead guilty against your free will?

[Teter]: No, your Honor.

[The Court]: Can you think of anything at all they should have done differently in the handling of your case?

[Teter]: No, your Honor.

. . . .

[The Court]: The plea is found to be voluntary, knowing and intelligent and is accepted.

On May 21, 2019, the plea court sentenced Teter to thirty years' imprisonment with his sentence to be run concurrently with all ongoing sentences.

On September 3, 2019, Teter was indicted by a grand jury on three charges for his attempted escape: one count of kidnapping in the first degree, one count of committing

4

violence against an employee of the Department of Corrections, and one count of attempted escape from confinement. A jury later convicted him of one count of first-degree kidnapping and one count of committing violence against an employee of the Department of Corrections.[1] At Teter's sentencing hearing, the State provided a copy of the plea agreement from the murder case to the sentencing court:

> The Court: Is there a recommendation as to the length?
>
> [The State]: Per agreement in his prior murder case, we are not advocating a length of time or consecutive or concurrent. We'll defer to the Court.
>
> The Court: Okay. The State is remaining silent as to sentencing?
>
> [The State]: Yes, ma'am.
>
> . . . .
>
> The Court: And the defendant—Mr. Teter, do you have anything to say?
>
> [Teter]: Your Honor, the only thing I have to say on the record is what the plea agreement was which is page 4, line 1 through 6. You have a copy.
>
> The Court: Okay. It says it's concurrent.
>
> [The State]: It says we will not argue for consecutive.
>
> [Teter]: Your Honor, that was the plea that was made in the last case.
>
> [The State]: In the end, Judge, no matter what the State says, it's up to the judge to decide what happens.
>
> The Court: What?
>
> [The State]: It's up to you, and I defer to the Court on every level of this.
>
> The Court: Okay. All right. What do you want to say then? The record shows from his plea of guilty . . . the State will agree for any sentence

---

[1] The remaining attempted-escape-from-confinement count was dismissed by the State at trial.

5

arising from [the attempted-escape] prosecution to run concurrent with [the murder] sentence.

[The State]: I'm not disagreeing with that, Judge. I will adhere to that agreement.

The Court: Okay. But that's not with—

[The State]: In the end, it's still up to you, Judge.

The Court: The Prosecutor's Office no longer has any sentence [recommendation] and has not made any recommendation.

Teter was then sentenced to terms of thirty years' imprisonment and ten years' imprisonment for the respective convictions. But, both sentences were ordered to run consecutively to all of Teter's ongoing sentences (and concurrently with each other).

Teter timely filed this motion for post-conviction relief from his guilty plea to second-degree murder. The motion court appointed counsel to file an amended motion, but the appointed counsel was granted permission to withdraw after Teter requested to proceed *pro se*. The motion court addressed the claims in Teter's final amended motion in two separate rulings.

In its initial ruling on April 29, 2022, the motion court rejected all of Teter's claims without a hearing, except for his assertion that the State violated the terms of the plea agreement by failing to recommend that his sentences from his attempted-escape case should run concurrently with his other sentences. In its discussion of that claim, the motion court noted Teter was in the process of appealing his convictions and sentences in his attempted-escape case and was presenting a similar argument in that direct appeal—that the trial court had erred by sentencing him in violation of the plea agreement's terms.

6

Thus, the motion court stayed the proceedings until the Missouri Supreme Court disposed of Teter's direct appeal.

The Missouri Supreme Court upheld Teter's convictions and sentences in his attempted-escape case. *State v. Teter*, 665 S.W.3d 306, 318 (Mo. banc 2023). Regarding Teter's argument that the plea agreement from his murder case had been violated, the Supreme Court held that the sentencing court acted within its discretion in rejecting the State's recommendation:

> Teter was specifically informed prior to trial "any recommendation by the prosecutor is not binding on the judge who may accept or reject such recommendation." It is clear from the record the circuit court had the plea agreement in front of it and Teter specifically drew the court's attention to the terms of that agreement. The sentencing court in this case discussed the plea agreement with both parties and acted within its discretion when it sentenced within the statutory range, concurrently with one another, but to run consecutively to the existing sentences of incarceration. On these facts, this Court cannot say the circuit court abused its discretion.

*Id.* at 318 (footnote omitted).

Following this denial of the direct appeal in the attempted-escape case, the motion court held an evidentiary hearing on Teter's claim that the State rendered the guilty plea in his murder case involuntary by failing to recommend concurrent sentencing.

Teter was the sole witness to testify. In his testimony, he repeated the contents of certain sections of the sentencing transcript, which were already in the PCR record, and asserted that he would not have pleaded guilty without the allegedly breached promise. On cross-examination, Teter recognized he received several benefits from the agreement: that pleading guilty to second-degree murder, instead of first-degree murder, removed the possibility of capital punishment or a sentence of life in prison without the possibility of

parole; that the State recommended only a thirty-year sentence instead of a maximum sentence of life in prison; that his sentence for this murder conviction would run concurrently with the remainder of his sentence for his first murder conviction; and that the State agreed not to prosecute four other cases against him. He also admitted that, at the time of his guilty plea, the State had not yet filed any charges related to his escape attempt, so the benefits he would receive in the murder case were immediate and guaranteed while any benefit related to sentencing for his attempted escape was contingent on the State pursuing charges.

After the hearing, the motion court denied Teter's sole remaining claim for three reasons. First, it concluded that the promised recommendation for concurrent sentencing was not significant in light of the other terms in the plea agreement. Second, the motion court found that the State had satisfied the terms of the plea agreement. Finally, it found that Teter had not credibly demonstrated he would have refused to plead guilty if the plea agreement had not included the allegedly violated term.

Teter, now represented by appointed appellate counsel, timely appealed the denial of his PCR motion, raising five points on appeal.

**Standard of Review**

"This Court reviews the denial of a motion for post-conviction relief for clear error. 'A judgment is clearly erroneous when, in light of the entire record, the court is left with the definite and firm impression that a mistake has been made.'" *Staten v. State*, 624 S.W.3d 748, 750 (Mo. banc 2021) (citations omitted). To be entitled to an

evidentiary hearing on a Rule 24.035[2] motion, the movant "must show that (1) he alleged facts, not conclusions, warranting relief; (2) the facts alleged raise matters not refuted by the files and record of his case; and (3) the matters complained of resulted in prejudice to him." *Roberts v. State*, 276 S.W.3d 833, 835 (Mo. banc 2009) (emphasis omitted) (citing *Wilkes v. State*, 82 S.W.3d 925, 928 (Mo. banc 2002)). "An evidentiary hearing may only be denied when the record conclusively shows that the movant is not entitled to relief." *Id.* (quoting *Wilkes*, 82 S.W.3d at 928).

Alternatively, when an evidentiary hearing is held, "[w]e presume that the motion court's findings are correct, deferring to the motion court's superior ability to judge the credibility of witnesses at the evidentiary hearing." *Davis v. State*, 673 S.W.3d 482, 486 (Mo. App. W.D. 2023) (quoting *Courtney v. State*, 662 S.W.3d 344, 349 (Mo. App. W.D. 2023)).

**Point I**

In Point I, Teter argues that his plea counsel provided ineffective assistance by failing to advise him that the sentencing court could choose to reject the State's recommendation of concurrent sentencing in his attempted-escape case. However, Teter did not raise this claim in his amended PCR motion. His final amended motion raised five claims of ineffective assistance of counsel: (1) that his counsel did not investigate every possible defense in his murder case; (2) that his counsel failed to object to a purported breach of the plea agreement during sentencing for his murder conviction; (3)

---

[2] All rule references are to I MISSOURI COURT RULES – STATE 2022.

that his counsel coerced him into pleading guilty through sexual harassment; (4) that his counsel failed to provide the best defense possible; and (5) that his communication with counsel completely broke down during the case.[3] None of these claims relate to his counsel's purported failure to advise him of the sentencing court's ability to reject the State's sentencing recommendation.

Any allegation not raised in a PCR motion is waived and will not be reviewed on appeal, even for plain error review. *McLaughlin v. State*, 378 S.W.3d 328, 340 (Mo. banc 2012). Thus, Teter waived any review of this claim by failing to include it in his PCR motion.

Point I is denied.

## Point II

In Point II, Teter argues that the motion court erred in denying his claim that the State did not follow the plea agreement because the State failed to recommend to the sentencing court that his sentences for his escape-related convictions should run concurrently with his thirty-year sentence for murder.

> When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. If the prosecutor fails to fulfill a promise that induced a post-conviction movant's guilty plea, the movant is entitled to relief.

---

[3] Teter has appealed the denial of the third and fifth claims of ineffective assistance of counsel, which are addressed in Points IV and V. Teter did not appeal the denial of the remaining claims of ineffective assistance of counsel.

10

*Roberts*, 276 S.W.3d at 836 (citation modified). Although the State must fulfill its promise to recommend a sentence if that promise induced the defendant to enter a guilty plea, "[i]t is axiomatic a sentencing court is free to ignore the State's sentencing recommendation." *Teter*, 665 S.W.3d at 318 (citing *Stanley v. State*, 420 S.W.3d 532, 550 (Mo. banc 2014)).

Here, Teter seizes on the State's statements—that it would defer to the sentencing court's decision on whether to run the sentences concurrently or consecutively—and the sentencing court's statement—that the State had not made a sentencing recommendation—to argue that the State did not adhere to its promise to recommend concurrent sentencing in his attempted-escape case.

The Supreme Court examined these same statements during Teter's direct appeal in his attempted-escape case. *Id.* The Supreme Court did not find that the State had breached the plea agreement. Instead, it found that the State had recommended concurrent sentencing by submitting the plea agreement to the sentencing court but that the sentencing court had acted within its discretion to reject the State's recommendation of concurrent sentencing. *Id.*

The Supreme Court also concluded that the State's statements of "deference" to the sentencing court's decision on sentencing—which Teter identified as breaching the plea agreement—did not amount to abdication of the promised recommendation but rather constituted reiteration of the axiomatic principle that the sentencing court was not required to follow the State's recommendation: "The State reiterated [that any recommendation by the prosecutor is not binding on the judge who may accept or reject

11

such recommendation] to Teter at sentencing, stating, 'In the end, Judge, no matter what the State says, it's up to the judge to decide what happens.'" *Id.* at 318 n.12.

Upon its review of the record and after hearing Teter's testimony on the matter at an evidentiary hearing, the motion court determined that the State complied with the plea agreement's terms by presenting the written agreement with the sentencing recommendation to the sentencing court. If any doubt remained regarding whether the State retracted the agreed-upon recommendation, the sentencing court directly asked the State to clarify whether it was disagreeing with the terms of the prior plea agreement, and the State replied: "I'm not disagreeing with that, Judge. I will adhere to that agreement." Thus, the record refutes any claim that the State failed to adhere to the plea agreement.

The motion court did not clearly err in rejecting, after a hearing, Teter's claim that the State did not fulfill its promise to recommend concurrent sentencing in his attempted-escape case.

Point II is denied.

## Point III

In Point III, Teter argues the motion court erred in denying, without a hearing, his claim that the State failed to disclose two pieces of favorable evidence during discovery, which led Teter to plead guilty because he lacked favorable evidence to succeed at trial. Teter's claim stems from two photographs that the State turned over to him during discovery that separately depict Teter and his jail cell covered in blood. Teter asserts that these photos prove the State withheld two potentially favorable pieces of evidence. First, Teter alleges that the photos were altered by the State because neither he nor the jail cell

12

were covered in blood. From this contention, Teter asserts that the State failed to turn over surveillance footage that would depict himself and the jail cell free of blood and, thus, that would expose the State's alteration of evidence. Second, Teter claims that the State either lost or destroyed the blood evidence depicted in the photos before his counsel had the opportunity to test the blood for DNA.

"[B]efore an alleged disclosure violation can be cognizable in a Rule 24.035 proceeding, it must both attain constitutional significance (i.e., meet the requirements of *Brady*[4]) and *be of such a nature that it could not have been raised before the Rule 24.035 motion*." *Wallar v. State*, 403 S.W.3d 698, 707 (Mo. App. W.D. 2013) (emphasis added). If a defendant is aware of an alleged *Brady* violation during discovery but fails to raise it before filing a PCR motion, the PCR claim based on that *Brady* violation is not cognizable. *Mitchell v. State*, 510 S.W.3d 366, 372 (Mo. App. E.D. 2017).

The facts here are nearly identical to the facts of *Mitchell*. In his PCR claim, Mitchell alleged that the State violated *Brady* by failing to turn over a video of his first police interview, which would have purportedly shown that police had interviewed Mitchell in violation of his invocation of his right to counsel. *Id.* at 371. However, Mitchell's own PCR motion alleged that he was aware of the video recording—and the State's failure to turn it over—during discovery before his guilty plea. *Id.* at 371-72. "Because Mitchell's *Brady* claim could have been raised prior to filing his Rule 24.035 motion, his claim [was] not cognizable in a post-conviction relief setting." *Id.* at 372. In

---

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

his own amended PCR motion, Teter admits that the State turned over pictures showing both himself and the crime scene covered in blood during discovery. Thus, before pleading guilty, Teter was informed of the potentially lost blood evidence and of the alleged alterations to the photos; so, like the *Mitchell* case, he was aware of both possible *Brady* violations. Nonetheless, Teter did not raise either potential *Brady* violation during discovery and instead raised them for the first time in his PCR motion.

Because both of the alleged *Brady* violations could have been raised before Teter's guilty plea but were instead raised for the first time in Teter's PCR motion, neither claim is cognizable, and the motion court did not err in rejecting them without a hearing.

Point III is denied.

### Points IV and V

In Point IV, Teter argues the motion court erred in denying, without a hearing, his claim that his plea counsel provided ineffective assistance of counsel due to a conflict of interest created by his attorneys' demands for sexual favors in return for a favorable outcome at trial, which coerced Teter into pleading guilty. In Point V, Teter argues the motion court erred in denying, without a hearing, his claim that his plea counsel provided ineffective assistance of counsel because of a complete breakdown in communication.

"Where there is a plea of guilty, a claim of ineffective assistance of plea counsel is immaterial except to the extent that the conduct affected the voluntariness and knowledge with which the plea was made." *Jackson v. State*, 660 S.W.3d 679, 682 (Mo. App. E.D. 2023) (quotation marks omitted). "If an examination of the guilty plea proceedings

14

directly refutes a movant's claim that his plea was involuntary, then the movant is not entitled to any relief." *Id.*

"[A] motion court properly denies an evidentiary hearing on a motion for post-conviction relief where the movant repeatedly assured the plea court that he was satisfied with counsel's representation and that counsel did everything he requested and the movant was given 'ample opportunity to express his duress' to the court." *Conger v State*, 356 S.W.3d 217, 222 (Mo. App. E.D. 2011) (quoting *Jaegers v. State*, 310 S.W.3d 313, 315 (Mo. App. W.D. 2010)).

"To preclude [a PCR] evidentiary hearing, inquiry into defendant's satisfaction with performance of trial counsel conducted at sentencing proceedings must be specific enough to elicit responses from which motion court may determine that record refutes conclusively allegation of ineffectiveness asserted in motion for postconviction relief . . . ." *Evans v. State*, 921 S.W.2d 162, 165 (Mo. App. W.D. 1996); *cf. State v. Driver*, 912 S.W.2d 52, 55 (Mo. banc 1995) ("To preclude an evidentiary hearing, however, the Rule 29.07(b)(4) inquiry must be specific enough to elicit responses from which the motion court may determine that the record refutes conclusively the allegation of ineffectiveness asserted in the Rule 29.15 motion.").

The record from Teter's plea hearing directly refutes both of his claims of ineffective assistance of counsel. During the plea colloquy, the trial court asked Teter if he had been threatened into pleading guilty or if his counsel had forced him to plead guilty against his own free will. In response to both inquiries, Teter assured the court he had not been threatened or coerced by anyone, including his counsel—directly refuting

his current claim in Point IV that his counsel coerced his guilty plea by sexually harassing him.

Similarly, the plea court asked Teter several times if he had plenty of time to speak with his counsel about his case, if he would have liked his counsel to have done anything differently in his case, and if his counsel had refused to do anything that he asked them to do. Teter expressed unqualified satisfaction with the performance of his counsel and did not raise any issue with his ability to communicate with counsel or assert that his counsel refused to communicate with him—directly refuting his claim in Point V of a breakdown in communication. The motion court did not clearly err in concluding that Teter's claims of ineffective assistance of counsel as to these two points on appeal were refuted by the record or in denying these claims without a hearing.

Points IV and V are denied.

## Conclusion

The judgment of the motion court is affirmed.

_____
Mark D. Pfeiffer, Presiding Judge

Cynthia L. Martin, Judge, and Janet Sutton, Judge, concur.