# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 07-1234

———————

David Barnett,

        Appellant,

    v.

Don Roper,

        Appellee.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Eastern District of Missouri.
\*
\*
\*

———————

Submitted:  May 14, 2008
Filed:  September 5, 2008

———————

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

David Barnett was convicted by a jury of, among other things, two counts of first degree murder, and sentenced to death. The facts surrounding the killings are set forth fully in the decision of the Missouri Supreme Court affirming Barnett's conviction on direct appeal and will not be recounted here. See State v. Barnett, 980 S.W.2d 297 (Mo. 1998) (en banc). Following that decision, Barnett was denied post-conviction relief. Barnett v. State, 103 S.W.3d 765 (Mo. 2003) (en banc). The district court[1] denied Barnett's request for a writ of habeas corpus. Barnett has appealed,

———————

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

alleging that the post-conviction court should have granted him an evidentiary hearing on his ineffective assistance of trial counsel claim, that the prosecutor used her peremptory strikes to discriminate against women, and that the prosecutor violated Barnett's due process right by stating a personal opinion about the appropriateness of the death penalty. We affirm.

We review a district court's conclusions of law *de novo* and its findings of fact for clear error. Malcom v. Houston, 518 F.3d 624, 626 (8th Cir. 2008).

## I. Timely Filing of the Habeas Petition

As a preliminary matter, we address the state's argument, raised for the first time on appeal, that the district court's judgment should be affirmed because Barnett's petition for a writ of habeas corpus was not timely filed as required by 28 U.S.C. § 2244(d). Barnett concedes that his application was filed twenty-five days late, but argues that the state has waived this defense.[2]

The Federal Rules of Civil Procedure govern habeas proceedings unless superseded by the rules governing section 2254 or 2255 cases. Fed. R. Civ. P. Rule 81(a)(4). The Rules provide that limitations defenses are forfeited unless pleaded in an answer or an amendment to the answer. Day v. McDonough, 547 U.S. 198, 207-08 (2006) (citing Rules 8(c), 12(b), and 15(a)). The Supreme Court has carved out an exception in habeas cases that allows a district court to consider sua sponte the timeliness of a state prisoner's petition. Day, 547 U.S. at 209. Even if this exception

---

[2]"[T]he issue in this case is more accurately described as one of forfeiture rather than waiver. Although jurists often use the words interchangeably, forfeiture is the failure to make the timely assertion of a right[;] waiver is the intentional relinquishment or abandonment of a known right." Kontrick v. Ryan, 540 U.S. 443, 458 n.13 (2004) (internal citations and quotations omitted) (second alteration in original).

extends to allowing district courts to consider a party's belated motion alleging untimeliness, we decline to extend it to the appellate level, in part because the Supreme Court has also held that only an objection to subject matter jurisdiction may be raised post-trial; objections to untimeliness can no longer be raised after the case has been decided. Kontrick v. Ryan, 540 U.S. 443, 459-60 (2004).

Because it raised no limitations-period objections to Barnett's motion for an extension of time to file his habeas petition, nor did it raise the issue in any responsive pleading or at any other time before the district court, the state has forfeited the objection and  may not raise it for the first time on appeal.

## II.  Procedural Default

Barnett's motion for post-conviction relief under Missouri Supreme Court Rule 29.15 alleged, among other things, ineffective assistance of trial counsel. Barnett v. State, 103 S.W.3d at 768.  Barnett argued, in part, that his trial counsel was ineffective for failing to failing to investigate and present the details of his childhood circumstances and for failing to call a mental health expert that would have been more persuasive than those who were actually called.  In support of his assertions, Barnett proposed to call several hundred witnesses, which were listed with the witness's full name (when known) and address (when known), but not the substance of that witness's testimony.  The text preceding the list was purportedly an amalgamation of what the roughly 450 witnesses would testify to.  The Missouri post-conviction court denied Barnett's motion without an evidentiary hearing because the pleading failed to comply with the procedural requirements of Rule 29.15.  Id. at 769-70.  The Missouri Supreme Court upheld that court's decision.  Id.

Federal courts will not review a state court decision that  rests on "independent and adequate state procedural grounds." Coleman v. Thompson, 501 U.S. 722, 729-30 (1991).  This rule applies to bar federal habeas claims that a state has declined to

consider because of the prisoner's failure to satisfy a state procedural requirement. <u>Id.</u> A state procedural rule will not bar enforcement of a federal right, however, unless the rule furthers a legitimate state interest. <u>James v. Kentucky</u>, 466 U.S. 341, 348-49 (1984); <u>Henry v. Mississippi</u>, 379 U.S. 443, 447-49 (1965). Likewise, a state procedural rule will not bar enforcement of a federal right if, although independent and adequate, the rule is applied in an "exorbitant" manner. <u>Lee v. Kemna</u>, 534 U.S. 362, 376 (2002). The adequacy of a state's procedural rule "'is itself a federal question.'" <u>Id.</u> at 375 (quoting <u>Douglas v. Alabama</u>, 380 U.S. 415, 422 (1965)).

## A.

A state procedural rule is adequate only if it is a "firmly established and regularly followed state practice." <u>James v. Kentucky</u>, 466 U.S. 341, 348-49 (1984). Barnett argues that the rule announced in <u>Morrow v. State</u>, 21 S.W.3d 819 (Mo. 2000) (en banc), which was decided after Barnett filed his petition, was not firmly established by prior Missouri case law, nor was it a regularly followed state practice.

In general, to obtain an evidentiary hearing on a Rule 29.15 motion, "the movant must allege facts [not conclusions], not refuted by the record, showing that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney and that the movant was thereby prejudiced." <u>State v. Jones</u>, 979 S.W.2d 171, 180 (Mo. 1998) (en banc); <u>see</u> <u>White v. State</u>, 939 S.W.2d 887 (Mo. 1997) (en banc); <u>State v. Williams</u>, 945 S.W.2d 575, 582 (Mo. Ct. App. 1997), *abrogated on other grounds by* <u>Deck v. State</u>, 68 S.W.3d 418, 427 (Mo. 2002) (en banc); <u>State v. Simmons</u>, 875 S.W.2d 919, 923 (Mo. Ct. App. 1994); <u>State v. Pendas</u>, 855 S.W.2d 512 (Mo. Ct. App. 1993); <u>State v. Dudley</u>, 819 S.W.2d 51, 56 (Mo. Ct. App. 1991); <u>State v. Jennings</u>, 815 S.W.2d 434 (Mo. Ct. App. 1991); <u>State v. Fitzgerald</u>, 781 S.W.2d 174, 188 (Mo. Ct. App. 1989).

-4-

When the claim of ineffective assistance relates to counsel's failure to investigate or call witnesses, Rule 29.15 does not require an evidentiary hearing if the movant does not "identify who the witnesses were, what their testimony would have been, whether or not counsel was informed of their existence, and whether or not they were available to testify." Dudley, 819 S.W.2d at 56; see Williams, 945 S.W.2d at 582; Simmons, 875 S.W.2d at 923; Pendas, 855 S.W.2d at 516; Childress-Bey v. State, 779 S.W.2d 697, 699 (Mo. Ct. App. 1989). See also Jennings, 815 S.W.2d at 448-49 (requiring that the motion "state the facts to which the unproduced witness would have testified" before an evidentiary hearing is granted); Barton v. State, 802 S.W.2d 561, 562 (Mo. Ct. App. 1991) (same); Fitzgerald, 781 S.W.2d at 188 (movant must allege the facts to which the witness would testify and must make the witness known to counsel); Johnson v. State, 776 S.W.2d 456, 458 (Mo. Ct. App. 1989) (movant must allege the facts to which the witness would testify). The Missouri Supreme Court upheld the post-conviction court's decision because the pleading "did not connect a specific portion of the narrative to a particular witness, did not allege that counsel was informed of their existence, and did not state that any of the witnesses were available to testify." Barnett, 103 S.W.3d at 770. Although this phrasing of the rule is not a verbatim repetition from earlier cases, it accurately sets forth the essential elements of the rule, which we conclude was firmly established at the time Barnett filed his Rule 29.15 motion.

These pleading requirements have been regularly applied in Missouri courts. Barnett points to several Missouri cases that he believes show that the standard has not been applied consistently and that his pleadings were sufficient. In two of those cases, the appellate court remanded for an evidentiary hearing in light of a motion that alleged the name, the testimony, and the willingness to testify of a witness whom counsel should have called. See State v. Sublett, 887 S.W.2d 618, 621-22 (Mo. Ct. App. 1994); Jones v. State, 760 S.W.2d 176, 177 (Mo. Ct. App. 1988). Another case was remanded for an evidentiary hearing on a motion that met the pleading requirements but in which the post-conviction court inadvertently overlooked the valid

claim set forth midway in an invalid claim. Griffin v. State, 937 S.W.2d 400, 400-01 (Mo. Ct. App. 1997). In two of the cited cases, the state agreed with the movant that the matters should be remanded for an evidentiary hearing. See Teaster v. State, 986 S.W.2d 175, 175-76 (Mo. Ct. App. 1999); Webster v. State, 837 S.W.2d 585, 587-88 (Mo. Ct. App. 1992) (pleading requirements satisfied, and the circuit court fundamentally misunderstood movant's theory of the case and consequently the importance of the witness that his attorney should have called). One court remanded for an evidentiary hearing despite its finding that the pleadings were factually insufficient, with the decision to do so being based on the extenuating circumstances that the movant's guilty plea was equivocal and the allegation that the movant would not have pleaded guilty but for his counsel's ineffective assistance. Sederes v. State, 776 S.W.2d 479, 480-81 (Mo. Ct. App. 1989). None of the grounds for reversal in any of these cases indicate that Missouri arbitrarily or irregularly applies the pleading requirements for a Rule 29.15 motion.

Barnett argues that any such requirements are not firmly established because the Missouri Supreme Court has since held in Wilkes v. State, 82 S.W.3d 925 (Mo. 2002) (en banc), that Rule 29.15 hearing petitions are not held to any special pleading requirements. Although Wilkes contains a statement to that effect, id. at 929, it does so only after reiterating both the general pleading requirements and the requirements specific to claims alleging ineffective assistance for failure to call a witness. Barnett further argues that Wilkes shows that the pleading requirements have not been regularly applied because Wilkes's motion did not state what the content of the witness's testimony would have been or that the witness was available to testify. See Wilkes, 82 S.W.3d at 929. The witness had testified at Wilkes's first trial, however, which had resulted in a hung jury, and Wilkes claimed that his counsel had been ineffective by not calling that witness at his second trial. 82 S.W.3d at 927-29. In those circumstances, the content of the witness's testimony was already fully known because it had already been given under oath. See id. at 928-29. Further, there was no reason to believe that the witness would not be available at the second trial, and

that even if he was not, his former testimony could have been introduced as evidence. See id. Moreover, the Wilkes court found that the allegations in the motion contained the necessary implication that the witness was available to testify. See id. at 929. The unique factual circumstances present in Wilkes justify the outcome reached therein and do not indicate that Missouri does not regularly apply its pleading requirements.

In sum, we conclude that Missouri's procedural rule is firmly established and regularly applied and constitutes an independent and adequate ground that bars our review of Barnett's claims.

B.

A state procedural rule will bar federal review only if it serves a legitimate state interest. Henry, 379 U.S. at 447-49. Missouri has a legitimate state interest in not conducting evidentiary hearings in the face of insufficient pleadings because in the absence of sufficiently specific allegations, "finality is undermined and scarce public resources will be expended to investigate vague and often illusory claims, followed by unwarranted courtroom hearings." White, 939 S.W.2d at 893.

A state has an especially strong interest in enforcing the requirement of specificity in pleadings in cases involving numerous allegations because of the additional expenditure of needless time and effort required to winnow out whatever valid, substantive claims may be worthy of review. Barnett appears to contend that his trial counsel was ineffective for failing to call approximately 450 witnesses. One cannot fault the state court for concluding that such a broad, undifferentiated pleading does not comply with the state's procedural rules.

## C.

Even if a state procedural rule is firmly established and regularly applied and thus constitutes an adequate and independent state ground that precludes federal review, federal courts may review "exorbitant" applications of such rules. Lee v. Kemna, 534 U.S. 362, 376 (2002). In Lee, the Supreme Court relied upon several considerations in holding that a state's procedural rule requiring that a motion for a continuance be in written form and supported by an affidavit was not adequate to block adjudication of Lee's federal claim. Id. at 372, 381. The first of these was the trial judge's unusual scheduling conflict. Id. at 381. Second, three critical defense witnesses unexpectedly disappeared on what became the last day of trial, a situation the procedural rule was apparently neither designed to address nor to which it had ever been applied. Id. at 382. Indeed, the arguments advanced on appeal as the basis for faulting counsel's alleged failure fully to comply with the rules were not raised until long after the trial. Id. at 380. Finally, given those unique circumstances, trial counsel's oral motion constituted substantial compliance with the applicable rule. Id. at 382-83. Because no similar unforeseeable circumstances justifying a relaxation of the pleading requirements were present in Barnett's case, we cannot say that the Missouri Supreme Court's application of Rule 29.15 was "exorbitant."

Accordingly, we conclude that Rule 29.15 constituted an independent and adequate basis for the denial of Barnett's request for an evidentiary hearing, and thus we are precluded from considering that claim on habeas review.

## III. Batson and J.E.B.

A federal court must grant a state prisoner a writ of habeas corpus only if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.

§ 2254(d). Thus, the state court's decision must be objectively unreasonable, and not merely incorrect, for us to grant the writ. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003); Forsyth v. Ault, No. 07-2839, 2008 WL 3166272, at *3 (8th Cir. Aug. 8, 2008). We presume that the state court's findings of fact are correct, and the prisoner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The Equal Protection Clause prohibits the use of race-based peremptory strikes against a person. Batson v. Kentucky, 476 U.S. 79, 90-91 (1986). Under J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 141-42 (1994), this rule also applies to peremptory strikes based on the potential juror's sex. Once a prima facie case has been made that a Batson or J.E.B. violation has occurred, the burden shifts to the state to offer a race- or sex-neutral explanation for the strike. Swope v. Razzaq, 428 F.3d 1152, 1154 (8th Cir. 2005) (per curiam). The burden then returns to the defendant to prove that the state's explanation was pretextual. See id. at 1154-55. The court should consider all the relevant circumstances in resolving this issue. See Miller-El v. Dretke, 545 U.S. 231, 265-66 (2005).

Barnett argues that the Missouri Supreme Court's application of J.E.B. was unreasonable regarding two female potential jurors, Donna Straub and Paula Moore. The prosecutor stated that she struck Straub because Straub was "a very young female who is single," and that Straub was "weak" and "would not be a good state's juror." The Missouri Supreme Court upheld the strike because the "prosecutor's response, in context, is that Ms. Straub was struck because she was 'very young' and 'single,' not because she was 'female.'" State v. Barnett, 980 S.W.2d at 302. The prosecutor's motive in striking a juror is a factual issue, Shurn v. Delo, 177 F.3d 662, 665 (8th Cir. 1999), and so is entitled to the presumption of correctness required by 28 U.S.C. § 2254(e)(1), which can be rebutted only by clear and convincing evidence.

Barnett argues that the Missouri Supreme Court's decision is unreasonable because the prosecutor used all of her eleven peremptory strikes against women and none against similarly situated men. Barnett compares his case favorably to the facts in Miller-El, which was decided subsequent to the denial of his petition for habeas relief. In Miller-El, prosecutors shuffled the jury twice and offered no reason to rebut the defendant's evidence that this was done to limit the number of black persons on the jury. Id. at 26. Ten of the eleven qualified black persons were peremptorily struck; two of those who were allegedly struck for being hesitant about applying the death penalty actually gave answers that any unbiased prosecutor seeking the death penalty would have readily accepted. Id. Half of the blacks but only 3% of the non-blacks were subject to a strike-justifying script designed to elicit hesitation about imposing the death penalty. Id. All of the blacks but only about a quarter of the non-blacks were asked a trick question. Id. at 265-66. "The prosecutors' chosen race-neutral reasons for the strikes do not hold up and are so far at odds with the evidence that pretext is the fair conclusion . . . ." Id. at 265.

Although the use of the strikes against only women may constitute some evidence of a discriminatory motive, Barnett does not point to the presence of any young, single males in the jury pool whom the prosecutor should have struck. Further, the egregious facts present in Miller-El were not present during Barnett's trial. There was no jury shuffling, and no different forms of questioning were posed to the male and female members of the jury pool. Accordingly, any differences between the justification for the strike and the answers given by Straub are not sufficient to rebut by clear and convincing evidence the sex-neutral explanation offered by the prosecutor.

The prosecutor stated that she struck Moore because Moore had not answered any of her questions, with the result that she felt like Moore was an unknown. Barnett makes much of the fact that Moore did actually answer one of the prosecutor's questions with a "yes," contending that this demonstrates the prosecutor's

discriminatory intent.  Barnett also argues that two male jurors had been similarly silent during voir dire but were not struck.  While this may constitute some evidence of a J.E.B. violation, silence during general questions to the venire is a race- and sex-neutral reason for a strike.  Also, the prosecutor's failure to recall that one juror did in fact answer one question does not constitute clear and convincing evidence of discriminatory intent.

Accordingly, the district court did not err in ruling that the Missouri Supreme Court's decision denying Barnett's challenge to the jury-selection process was neither contrary to, nor an unreasonable application of, federal law.  In reaching this conclusion, we have taken into account the Supreme Court's recent decision in Snyder v. Louisiana, 128 S. Ct. 1203 (2008), and find that none of the factors that warranted habeas relief in that case were present in Barnett's case.

## IV.  Prosecutor's Opening Argument During the Penalty Phase

Barnett argues that the prosecutor improperly stated her personal opinion during her opening argument during the penalty phase of the trial.  Our review of this issue is also governed by 28 U.S.C. § 2254, as discussed above.

Improper remarks by the prosecutor can violate the Fourteenth Amendment if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  "The court should only grant habeas corpus relief if the state's 'closing argument was so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial.'" Weaver v. Bowersox, 438 F.3d 832, 840 (8th Cir. 2006), *cert. dismissed sub nom* Roper v. Weaver, 127 S. Ct. 2022 (2007), (quoting James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999)).  Relief will be granted only upon a showing of a reasonable probability that the outcome would have been different but for the improper statement.  Shurn v. Delo, 177 F.3d 662, 667 (8th Cir. 1999).

The prosecutor in Barnett's case stated:

> The judge read to you the instructions about the aggravating circumstances. And I think you'll find that the very nature of the crime itself constitutes the aggravating circumstances that you are to consider. I submit to you that those have already been proven beyond a reasonable doubt. The decisions that are left for you to make are whether you believe that those murders warrant the imposition of the death penalty. *And if those don't, I don't know what does*.

Add. 119 (emphasis added). Barnett's contemporaneous objection was later forfeited, so the Missouri Supreme Court reviewed the challenged statement for plain error and found none. The district court thought the statement improper, but found that the Missouri Supreme Court had not unreasonably applied federal law.

Barnett contends that under <u>Weaver</u>, <u>Shurn</u>, and <u>Newlon v. Armontrout</u>, 885 F.2d 1328 (8th Cir. 1989), the prosecutor's statement mandates a new penalty phase trial. In <u>Newlon</u>,

> the prosecutor (1) expressed his personal belief in the propriety of the death sentence and implied that he had special knowledge outside the record; (2) emphasized his position of authority as prosecuting attorney of St. Louis County; (3) attempted to link petitioner with several well-known mass murderers; (4) appealed to the jurors' personal fears and emotions; and (5) asked the jurors to "kill him now. Kill him now."

885 F.2d at 1335. In <u>Shurn</u>, the prosecutor made arguments nearly identical to those made in <u>Newlon</u>. <u>Shurn</u>, 177 F.3d at 665-66. The improper statements made in <u>Weaver</u> can be placed into five categories:

> (1) an analogy that the role of a juror is like that of a soldier who must do his or her duty and have the courage to kill; (2) statements by the prosecutor about his personal belief in the death penalty; (3) statements

-12-

that executing Weaver was necessary to sustain a societal effort as part of the "war on drugs"; (4) assertions that the prosecutor had a special position of authority and decided whether to seek the death penalty; and (5) arguments that were designed to appeal to the emotions of the jury (culminating in a statement that the jury should "kill [Weaver] now").

438 F.3d at 840. Although in each of these cases statements of personal belief about the applicability of the death penalty were made, the prosecutors also made a number of additional improper statements, including commands that the jury "kill [the defendant] now" and assertions of special authority over the circumstances in which the death penalty should be applied. We conclude that the complained-of comment made by Barnett's prosecutor does not compare in polemical stridency with those described above and was not so outrageous or prejudicial as to warrant a sua sponte declaration by the trial court of a mistrial, nor did it inject such unfairness into the penalty phase that Barnett was denied due process of law. Accordingly, the district court did not err in ruling that the Missouri Supreme Court's decision rejecting Barnett's challenge to the argument was neither contrary to nor an unreasonable application of federal law.

## V. Conclusion

Given the deferential standard of review that we are required to apply during federal review of a state prisoner's petition for a writ of habeas corpus, we conclude that Barnett is not entitled to habeas relief.

Accordingly, the judgment is affirmed.

_____

-13-